COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Willis
Argued at Salem, Virginia


WILLIAM TODD HOUSE
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 0654-96-3   CHIEF JUDGE NORMAN K. MOON
                                          MAY 27, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                    Donald R. Mullins, Judge

        Norman Lamson for appellant.

        Ruth A. Morken, Assistant Attorney General
        (James S. Gilmore, III, Attorney General;
        Margaret Ann B. Walker, Assistant Attorney
        General, on brief), for appellee.


     William Todd House appeals the revocation of his suspended

sentence.  House asserts that the trial court abused its

discretion in revoking his suspended sentence on the basis of its

finding that House had failed to perform public service, a

condition of his probation.  Holding that the trial court's

revocation of House's suspended sentence was based on reasonable

cause and was within the sound discretion of the trial court, we

affirm.

     On March 13, 1995, House was convicted of attempting to

purchase or possess a firearm after having been convicted of a

felony.  Subsequent to a hearing on April 24, 1995, House was

sentenced to five years in prison, all of which were

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

conditionally suspended.  At the conclusion of the sentencing

hearing, the trial court explained the terms of the suspended

sentence to House, stating:

> I'm going to sentence you to five years in
> the penitentiary.  And I am going to suspend
> that on the normal and usual terms and
> conditions of probation.  One of the special
> conditions will be that you get a job.  A
> full time job or at any time that you're not
> fully employed you'll have to perform
> community service.  At least thirty-six hours
> a week.  And if you fail to do that then
> you'll be in violation of your probation and
> the Court will then have you serve the five
> years.

(Emphasis added.)  In relevant part, the final sentencing order

stated: "[t]he Court . . . does suspend the execution of the

aforesaid penitentiary sentence . . . upon the express terms and

conditions that the defendant be of good behavior . . . [and]

that he perform community service if not employed full time

. . . ."

In order to participate in the community service program, it

was necessary for House to sign a liability release form.  House,

who had previously suffered a back injury and took prescription

medication for the injuries, refused to sign the waiver.  House's

probation officer, H. M. Flynn, and the community service

placement director had been informed of House's condition and the

consequent limitations on his work capacity by House's physician.

Accordingly, Flynn ordered that House only be assigned to

community service positions within the range of his capabilities.

Nevertheless, Flynn reported that House told the community

- 2 -

service placement director that "someone [would] be responsible for [him] getting injured."

Flynn notified the court that House had violated the terms of his probation by refusing to follow his probation officer's instructions and by failing to be cooperative. Specifically, Flynn reported House's refusal to sign the liability release form and his statement to the community service placement director. A revocation hearing was conducted at which House stated that he would perform community service and that he would not "present himself as some invalid at a work site and create problems." On November 6, 1995, House's probation officer informed the court that House was then performing community service. Consequently, by written order dated November 17, 1995, the court continued House's probation on the same terms and conditions as originally imposed.

On December 20, 1995, House's probation officer informed the court that:

> On November 6, 1995, an update was presented to the court by letter indicat[ing] that Mr. House was performing community service. However, since that letter, subject has not performed community service due to work site supervisors not allowing him to perform his duties because of his attitude. Mr. House appears to be able to talk himself out of the community service work on the first day at each site by complaining of illnesses or other problems. This officer is requesting that the Probation Violation Hearing of July 15, 1995, be rescheduled with a recommendation of revocation.

On January 30, 1996, the trial court ordered House to show

cause why his probation should not be revoked.  Flynn testified that during the nine months that House had been on probation he had failed to regularly perform community service as required and that in fact, he had only performed 165.5 total hours of service.  Flynn stated that

> at each site [House] goes to he presents
> himself as injured, on drugs, not able to do
> the community service.  For example, at the
> last site, which would be the water treatment
> plant, his first statements basically were do
> I need to have shots before I work here?  I'm
> on Valium.  I've been injured and that kind
> of thing.  And of course none of the site
> supervisors will accept him.

Flynn also stated that he and the community service placement director were aware of House's work limitations and that Flynn had specifically instructed that House not be assigned work outside of his physical restrictions.  House testified that he never complained about the work "on any job site" and that he never stated that he "couldn't perform the work."  House also stated that he had worked on a variety of projects, but that ultimately someone would "pull him out."

The trial judge found that House had violated his probation and informed House that:

> [Y]ou've been before me on this issue and you
> were brought the first time because when you
> were sentenced here on April 24th the first
> time you appeared . . . to sign up for
> community service, you told the lady there
> that someone will be responsible for me
> getting injured.  That concerned the lady
> there.  And we had a little hearing about
> that and you came in and you told the Court
> that you were willing to work and that you
> would present yourself with an attitude that
> would get you through and you could complete

your community service. Community service is required of everybody on probation here and you know that. You knew it when you entered your plea. Full-time community service calls for a hundred and seventy-three hours a month. That's forty hours a week. A hundred and seventy-three hours a month. You were sentenced in April of '95. This is February or the last of January of '96 and you've performed a hundred and sixty-five and a half hours. I believe you've wasted your time and my time and chances have been exhausted. I'm finding you guilty of violating the terms of your probation. I'm going to revoke your suspended sentence and have you serve it.

Code § 19.2-303 provides that a trial court "may suspend imposition of sentence or suspend the sentence in whole or in part and in addition may place the accused on probation under such conditions as the court shall determine . . . ." In addition, "[t]he court may, for any cause deemed by it sufficient which occurred at any time within the probation period . . . revoke the suspension of sentence and any probation . . . [and] pronounce whatever sentence might have been originally imposed."

Code § 19.2-306; see also Patterson v. Commonwealth, 12 Va. App. 1046, 1048, 407 S.E.2d 43, 44 (1991). The trial court's decision to revoke must be based on reasonable cause, however, the trial court has broad discretion in determining when revocation is appropriate. Patterson, 12 Va. App. at 1048, 407 S.E.2d at 44. On appeal the trial court's revocation order will be reversed only where there has been a clear abuse of discretion. Slayton v. Commonwealth, 185 Va. 357, 367, 38 S.E.2d 479, 484 (1946).

Here, the record establishes that House understood that he

- 5 -

was to perform community service when he was not working and that during the nine months that he was on probation, he completed only 165.5 total hours of service. The record reflects that House was employed fixing small engines, but no evidence was introduced regarding how many hours a week House was employed nor how long House was employed. Ultimately, the record is only sufficient to prove that House performed 165.5 hours of community service, an amount constituting slightly less than one month of full-time community service.

Further, House's assertion that the trial court's order was ambiguous because it failed to specify the amount of community service to be performed is unsupported by the evidence. The trial judge's order from the bench specified thirty-six hours of service. The court's written order reiterated the court's intent that House "perform community service if not employed full time." That the written order did not restate the thirty-six hour requirement does not make the order any less binding on House.

As we have noted,
> generally a court speaks through its written orders. . . . However, where the record clearly establishes what was intended, we must give force and effect to that intent rather than rely solely on precise and technical wording of the court's written order.

Guba v. Commonwealth, 9 Va. App. 114, 118, 383 S.E.2d 764, 767 (1989). House stated that he understood the conditions of his suspended sentence and that he was "prepared to accept" the conditions imposed. Assuming, arguendo, that House believed that

he was to be employed at least thirty-six hours a week, and if not so employed, to perform community service, the record reflects that House failed to do even this.  The evidence

suggests that there were numerous weeks in which House neither worked full time, nor performed any amount of community service.

The record also establishes that House was responsible for the difficulty he experienced in retaining those community service positions offered to him. Flynn testified that both he and the community service placement director were aware of House's physical limitations. The record establishes that House was repeatedly offered positions which required work within the parameters of his physical abilities. However, when House was interviewed for the various positions offered, he would present himself as "on drugs," injured, and generally unsuited for work. Through these representations, he raised sufficient concern among the supervisors interviewing him to assure his rejection. House's testimony that he did not refuse the work offered and his assertions that he was "pulled out" of the positions where he was employed, need not have been accepted by the trial court. The credibility of witnesses and the weight to be accorded their testimony are matters for the trial court to decide. Slayton, 185 Va. at 367, 38 S.E.2d at 484.

Finding that the trial court's revocation of House's suspended sentence was reasonably based on House's failure to complete sufficient public service, we hold that the trial court did not abuse its discretion, and accordingly, we affirm.

Affirmed.